In the Supreme Court of Georgia

Decided: February 4, 2019

S18A1154.  BIRDOW v. THE STATE.

BETHEL, Justice.

Mark Birdow appeals from his convictions for malice murder and other crimes in connection with the 2010 death of Angela Woods.[1] He argues that

---

[1] On November 23, 2010, a Fulton County grand jury indicted Birdow on one count of malice murder, one count of felony murder predicated on aggravated assault by striking the victim in the head with an unknown object, one count of felony murder predicated on aggravated assault by stabbing the victim with a knife, two counts of aggravated assault, possession of a knife during the commission of a felony, and abandonment of a dead body. In a jury trial held in 2012, Birdow was found not guilty of felony murder predicated on aggravated assault by stabbing the victim with a knife but was found guilty on the remaining charges. Birdow was sentenced as a recidivist pursuant to OCGA § 17-10-7 (a) and (c) to life imprisonment without parole for the malice murder conviction. Additionally, he was sentenced to five years' imprisonment for the knife possession conviction and three years' imprisonment for the abandonment conviction, each to run consecutively to the murder conviction. The trial court purported to merge the remaining convictions with the malice murder conviction. However, the felony murder conviction was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Birdow filed a timely motion for new trial on August 14, 2012 and amended that motion through new counsel on May 30, 2014. After holding evidentiary hearings on the motion on June 13, 2016 and December 1, 2016, the trial court denied the amended motion on March 22, 2017. Birdow filed a timely notice of appeal, and the case was docketed to this Court's August 2018 term and submitted for a decision on the briefs.

the State failed to produce sufficient evidence at trial to overcome his claim of self-defense, that the trial court erred by excluding the testimony of an expert psychologist Birdow planned to call to testify about his behavior following Woods' death, that the trial court failed to provide him with appropriate technology that would have allowed him to hear the trial proceedings, and that his trial counsel was ineffective in several regards. For the reasons set forth below, we affirm.

1. Construed in the light most favorable to the verdict, the evidence presented at trial showed that, on July 30, 2010, Angela Woods was reported missing by her family. On August 28, 2010, two teenagers found her dead and decomposing body wrapped in a blanket and lying under a blue plastic container across the street from a Hapeville apartment complex. Her autopsy revealed that the cause of her death was homicide, likely caused by blunt force trauma to the head. The condition of Woods' body when the autopsy was performed was consistent with death occurring around July 30, 2010.

After Woods' body was discovered, law enforcement officers questioned residents of the apartment complex across the street. The residents who were interviewed reported that Birdow had lived there but had recently moved away.

2

Multiple witnesses recalled that, while Birdow lived in the complex, they smelled a bad odor in the apartment building. One resident also recalled seeing flies gathered near Birdow's bathroom window but noted that the flies were not present once Birdow was no longer living at the apartment. The neighbors and another witness also recalled seeing Birdow with extensive bandaging on both hands and both arms. At that time, Birdow had told one of the neighbors that he had injured his hand by "fooling with a bicycle." He also told a former co-worker whom he encountered that he injured his hands by "cutting some meat with a chainsaw."

Law enforcement officers obtained a search warrant for Birdow's former apartment. The officers conducting the search located large amounts of blood in various places in the apartment as well as a bloodstain on the exterior door. The officers swabbed several samples of the blood and collected several knives during their search of the apartment.

The officers then visited Birdow at his mother's home in Atlanta, where he had moved. The officers did not mention that he was a suspect in Woods' death and instead questioned him about the blood they had found in his apartment. At that time, the officers observed that Birdow had thick bandages

3

on both of his hands, which Birdow explained were covering wounds he suffered while trying to cut frozen chicken a month earlier. Birdow had also told his mother that this was how he sustained the wounds to his hands. The officers confirmed that Birdow had called for an ambulance on or about July 31, 2010, and that he was admitted to the hospital for a short time thereafter to treat the wounds to his hands.

The next day, Birdow went to the police station and admitted that he had lied to the officers about the cause of his injuries. He told the officers that, on the date Woods was killed, he had solicited sex from her. When Birdow and Woods went to his apartment, the victim asked him for a glass of water. Birdow claimed that, when he returned with the water she had requested, she attacked him with a knife—slicing his hands—and tried to rob him. He stated that he then grabbed a metal broom handle and struck her head with it at least twice. She then fell to the bed where he hit her head with the broom handle one additional time and then stabbed her once with a knife. He told police that when he was sure Woods was dead, he placed her in his bathtub, called an ambulance, and went to the hospital so the injuries to his hands could be

treated. When he returned from the hospital, he placed Woods' body in a plastic container which he then left across the street from the apartment.

At trial, the medical examiner testified that Woods suffered ten blunt force injuries to her head, which resulted in multiple skull fractures. She also suffered three sharp force injuries to her torso, likely as the result of stabbing. The medical examiner determined the cause of death to be homicide resulting from multiple head traumas.

The State also presented testimony from Dr. Pravin Reddy, the plastic and reconstructive surgeon who treated the lacerations to Birdow's fingers on July 31, 2010. Dr. Reddy testified that Birdow's injuries were not characteristic of defensive wounds and that, upon sustaining those injuries, Birdow would have been unable to grip anything. When Dr. Reddy was treating Birdow, Birdow informed him that he had sustained the cuts while cutting a frozen chicken. Dr. Reddy stated that it was "improbable" that Birdow could have suffered those injuries from that act and that such injuries were "incongruous" with what Birdow described.

Birdow argues that the evidence presented by the State was insufficient to overcome his claim of justification pursuant to OCGA § 16-3-21 (a). We disagree.

A person is justified in using deadly force only if he "reasonably believes that such force is necessary to prevent death or great bodily injury to himself. . . or to prevent the commission of a forcible felony." OCGA § 16-3-21 (a). When a defendant presents evidence that he was justified in using deadly force, the State bears the burden of disproving the defense beyond a reasonable doubt. *Andrews v. State*, 267 Ga. 473, 474 (1) (480 SE2d 29) (1997). Although statements made by Birdow to law enforcement suggested that he acted in self-defense when he hit and stabbed Woods, evidence presented by the State contradicted this account and called his credibility into question. Because it was for the jury to determine the credibility of witnesses as well as whether the use of deadly force was necessary under the circumstances of the case, the evidence presented by the State was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Birdow did not act in self-defense in attacking Woods. See *Russell v. State*, 267 Ga. 865, 866 (1) (485 SE2d 717) (1997). Moreover, our review of the record shows that the evidence presented

by the State was sufficient to authorize the jury to find beyond a reasonable doubt that Birdow was guilty of each of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Birdow argues that his trial counsel was ineffective for failing to call an expert witness to testify regarding the allegedly defensive nature of the wounds to Birdow's hands. We disagree.

At the first hearing on Birdow's motion for new trial, Birdow called a hand injury expert, Dr. Burton, to the stand. Dr. Burton testified that in his opinion, the wounds on Birdow's hands "could have been" defensive wounds. He also disagreed with Dr. Reddy's conclusion that the wounds to Birdow's hands did not have the characteristics of defensive wounds. Dr. Burton did state, however, that, once such wounds occurred, Birdow would have been unable to hold anything in the wounded hand.

At the second hearing on the motion for new trial, Birdow's trial counsel testified that, before trial, she retained Dr. Burton to look into the injuries that Birdow sustained during the altercation to elicit his opinion as to the cause of those injuries, specifically whether the injuries were defensive in nature. Counsel noted that Dr. Burton had not been able to "definitively" state that the

7

wounds were defensive. After interviewing Dr. Reddy before trial, trial counsel determined that the two experts' anticipated testimony was essentially the same—that it was not clear whether the wounds were defensive. Following that interview, trial counsel elected not to call Dr. Burton to testify.  At the hearing on the motion for new trial, counsel stated that she believed the jury would be able to understand through Dr. Reddy's testimony that there was no definitive way to know whether the wounds were defensive. Because of this, trial counsel determined that she could bring this information out by cross-examining Dr. Reddy.

At the hearing on the motion for new trial, trial counsel noted that Dr. Reddy's actual testimony "went very far afield from what he was [supposed] to be an expert in [and] I do believe he tried to say they were not defensive wounds." Trial counsel stated, however, that she did not consult with Dr. Burton after hearing Dr. Reddy's testimony and that she did not reconsider calling Dr. Burton as a witness. Rather, she elected to aggressively cross-examine Dr. Reddy and to avoid putting Dr. Burton on the stand.

> To prevail on his claim of ineffectiveness, Birdow
>
> has the burden of proving both that the performance of his lawyer was professionally deficient and that he was prejudiced as a result.

8

To prove deficient performance, [Birdow] must show that his trial counsel acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms. . . . In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

(Citations and punctuation omitted). *Stuckey v. State*, 301 Ga. 767, 771 (804 SE2d 76) (2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). Moreover,

how to deal with the presentation of an expert witness by the opposing side, including whether to present counter expert testimony, to rely upon cross-examination, to forego cross-examination and/or to forego development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim.

*Brown v. State*, 292 Ga. 454, 456-457 (2) (738 SE2d 591) (2013).

Here, before trial, trial counsel made a clear strategic choice not to call Dr. Burton to testify, reasoning that the same conclusions he would testify to could effectively be drawn out in the cross-examination of Dr. Reddy. Although Dr. Reddy's actual trial testimony was more definitive on the question of the defensive nature of Birdow's hand wounds than trial counsel anticipated, Dr. Burton's testimony would have only suggested that Dr. Reddy could not be certain that the wounds were not defensive in nature. Dr. Burton

9

was not prepared to definitively testify, and at the motion for new trial did not testify, that the wounds were defensive in nature.

The record also reflects that, as planned, Birdow's counsel cross-examined Dr. Reddy regarding the basis for his conclusion that the wounds were defensive in nature. Although the record established that Birdow was significantly taller than Woods, during cross-examination, Dr. Reddy admitted that his conclusions were based on the premise that the attacker and the victim were both adults, although not necessarily of the same height. Dr. Reddy admitted to being unfamiliar with how the general scientific understanding of defensive injuries might change in circumstances in which the assailant was significantly shorter than the person being attacked, as was the case here. Defense counsel drew on this testimony in closing argument by calling into question the basis of Dr. Reddy's conclusion that the wounds were not defensive and the certainty with which he expressed that conclusion in his testimony.

Finally, had Dr. Burton testified as he did at the hearing on the motion for new trial, his testimony could have contradicted a central premise of Birdow's self-defense theory—that he struck and stabbed Woods in self-

defense *after* she slashed his hands with a knife. Dr. Burton's testimony at the hearing on the motion for new trial was consistent with Dr. Reddy's trial testimony that the wounds to Birdow's hands would have left him unable to grip anything, including the objects used to hit and stab Woods. This testimony would have reinforced a point brought out in Dr. Reddy's testimony and would have further undermined Birdow's defense.

In light of the foregoing, we find no deficiency on the part of trial counsel in electing not to call Dr. Burton to testify at trial. See *Muckle v. State*, 302 Ga. 675, 680 (2) (808 SE2d 675) (2017) (no deficiency where testimony of witness would have conflicted with reasonable defense strategy pursued by trial counsel); *Matthews v. State*, 301 Ga. 286, 289 (2) (800 SE2d 533) (2017) (no deficiency where defense counsel elected not to call expert witness and instead decided to use cross-examination and argument to advance defense theory). Accordingly, this claim of ineffectiveness fails.

3. Birdow next contends that the trial court erred by not providing him with adequate hearing assistance during the trial. He also claims that his trial counsel was ineffective for failing to arrange adequate hearing assistance during the trial. Both contentions are meritless.

11

OCGA § 24-6-650 provides:

> It is the policy of the State of Georgia to secure the rights of hearing impaired persons who, because of impaired hearing, cannot readily understand or communicate in spoken language and who consequently cannot equally participate in or benefit from proceedings, programs, and activities of the courts . . . of this state and its political subdivisions unless qualified interpreters are available to assist such persons.

To give effect to this policy, the General Assembly has mandated that, upon timely request, courts must provide hearing impaired persons represented by appointed counsel with the assistance of court-qualified sign language interpreters at all court proceedings to which they are a witness or party. OCGA §§ 24-6-651; 24-6-654.

Although Birdow is hearing-impaired, the record reflects that he did not request the assistance of a sign-language interpreter during pre-trial proceedings or at trial. Instead, the trial court provided him with headphones that amplified the words spoken into microphones in the courtroom.

Birdow was asked a number of times throughout the proceedings whether he was able to hear what was being said in the courtroom. In instances in which he did not adequately hear or understand what a witness, an attorney, or the judge had said, Birdow was instructed to raise his hand and request that

12

the statement be repeated. The record reflects that Birdow utilized this procedure a number of times and that, in each instance, the speaker repeated the prior statement. The record also reflects that the trial court suspended the pre-trial proceedings at one point due to a failure of the technological assistance provided to Birdow and in several instances encouraged witnesses to take special care to speak loudly into the microphone due to Birdow's hearing impairment.

Birdow and his trial counsel neither objected to the form of assistance offered by the trial court or invoked Birdow's right to a sign language interpreter pursuant to OCGA § 24-6-650 et seq. On appeal, however, Birdow contends that the hearing assistance he was provided was inadequate. Like the trial court in considering his motion for new trial, we are not persuaded.

At the second hearing on the motion for new trial, Birdow's trial counsel stated that, prior to trial, she discussed Birdow's rights to hearing assistance with him. She also stated that Birdow wore the court-provided headphones throughout the proceedings and that "[Birdow] would always seem to say he could hear everything and understood what was going on." Trial counsel stated

13

that, when the audio equipment suffered a malfunction, the trial court delayed the start of the trial so that functioning equipment could be used.

Based on our review of the trial transcript and testimony from Birdow's counsel at the hearing on the motion for new trial, Birdow has not carried his burden of establishing that he was unable to hear any portion of the proceedings even when using the technological assistance and the procedure implemented by the trial court. See *White v. State*, 302 Ga. 806, 808 (3) (809 SE2d 749) (2018). See also *King v. State*, 300 Ga. 180, 182 (2) (794 SE2d 110) (2016) ("The appellant bears the burden of proving error by the appellate record."). Accordingly, we find no error on the part of the trial court with regard to the hearing assistance it provided to Birdow.

Moreover, to succeed on his ineffectiveness claim, Birdow "must show both that his counsel's performance was deficient and that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different." *Batten v. State*, 295 Ga. 442, 445 (3) (761 SE2d 70) (2014). "It is the appellant's heavy burden to prove the ineffective assistance of counsel, not the state's burden to prove the adequate assistance of counsel." (Citation and punctuation omitted.) Id. Here, we see nothing in the

record that suggests trial counsel was deficient in regard to obtaining adequate hearing assistance for Birdow throughout the proceedings below. The record establishes that Birdow utilized the procedure suggested by the trial court to indicate that he was unable to hear something that had been said in the courtroom and that the trial court made laudable efforts to encourage everyone speaking on the record to do so in a manner that Birdow could hear and to repeat a statement any time Birdow made a request to do so. Birdow has failed to point to any specific instance in which, by utilizing that procedure, he was unable to hear the proceedings, nor does the record establish that a specific alternate form of hearing assistance was necessary to enable him to understand what was being said in the courtroom. Thus, his enumerations regarding the adequacy of the hearing assistance he was provided fail.

4. Birdow next contends that the trial court abused its discretion by excluding expert testimony regarding Birdow's history of emotional trauma. Before trial, the State moved to exclude the testimony of a purported expert psychologist whom Birdow planned to call to testify. The witness apparently planned to testify regarding Birdow's history of emotional and psychological trauma and the fact that he suffered from post-traumatic stress disorder. Birdow

15

purported to offer this testimony to explain his behavior after Woods' death, including his claim that he stabbed her body after he had confirmed that she was dead.

The State moved to exclude this testimony, arguing that it was not relevant to any issue in the case. Specifically, the State argued that Birdow had not asserted an insanity defense for which evidence of his traumatic history might have been admissible. Instead, Birdow had presented only a justification defense, which, as discussed above, was predicated on his belief that Woods posed an imminent physical threat to him. On the basis of that argument, the trial court excluded the witness from testifying.[2]

Pretermitting whether the trial court abused its discretion in excluding this witness, any such error was harmless. By trial counsel's own statements to the trial court, the witness's testimony regarding Birdow's history of emotional trauma would not have directly supported his justification defense. It would have instead only helped to explain his behavior after the incident, including

---

[2] Birdow's counsel asked the trial court to reconsider its decision to exclude the expert testimony following testimony regarding Birdow's conduct after Woods was killed. The trial court denied this request.

his infliction of a stab wound to Woods' body after he believed her to already be dead and his decision to seek medical treatment for his own injuries while doing nothing to seek care for Woods or notify law enforcement of the incident. However, even assuming this testimony would have had its intended effect of explaining this behavior, Birdow's statements about the incident that formed the basis of the expert's testimony regarding the incident were flatly contradicted by the testimony of the medical examiner, who testified that rather than stabbing Woods only once, as Birdow admitted to doing, the autopsy of Woods revealed that she had been stabbed three times. Given that contradiction, Birdow's other inconsistent accounts of the incident, and the other evidence of his guilt, we find no harmful error in the trial court's decision to exclude this testimony.

5. Finally, Birdow argues that his trial counsel was ineffective for failing to object to the testimony of the State's hand injury expert on the basis that the testimony was outside the scope of the witness's expertise. Although the record reflects that Birdow was represented by new counsel when he filed his amended motion for new trial and called his trial counsel to testify at the

17

hearing on that motion, his appellate counsel asked no questions of trial counsel in that hearing on this issue.

The law recognizes a strong presumption that counsel performed reasonably, and Birdow bore the burden of overcoming this presumption. *State v. Mobley*, 296 Ga. 876, 877 (770 SE2d 1) (2015). In particular, deciding what objections to raise is a matter of trial strategy. *Gibson v. State*, 272 Ga. 801, 804 (4) (537 SE2d 72) (2000). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation omitted.) *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014). Birdow has not made that showing. This claim of ineffectiveness therefore fails.

Judgment affirmed. All the Justices concur.