305 Ga. 684
FINAL COPY

S19A0100.  LUCKIE v. BERRY.

BOGGS, Justice.

In this habeas case, Patrick Luckie challenges his 2005 convictions for unlawfully possessing heroin with intent to distribute and for abandoning a controlled substance in a public place. The judge at Luckie's criminal trial denied his motion to preclude the State from asking defense witness Gerald Hurst about Hurst's pending charge of unlawfully possessing heroin with intent to distribute.[1] Luckie had new counsel on appeal, who argued that the trial court abused its discretion in allowing the cross-examination, because Hurst's heroin charge did not show any relationship between Hurst and Luckie that might provide a motive

---

[1] The trial court based its ruling on a provision of the old Evidence Code, which applied to Luckie's 2005 trial. Former OCGA § 24-9-68 said: "The state of a witness's feelings toward the parties and his relationship to them may always be proved for the consideration of the jury." This provision was carried forward into the new Evidence Code without substantive change. See OCGA § 24-6-622 ("The state of a witness's feelings towards the parties and the witness's relationship to the parties may always be proved for the consideration of the jury.").

for Hurst to shade his testimony in Luckie's favor. The Court of Appeals affirmed, holding that Luckie failed to preserve this argument for appellate review by not objecting on this ground at trial. See *Luckie v. State*, 310 Ga. App. 859 (714 SE2d 358) (2011). Luckie later filed a habeas petition, alleging among other things that his appellate counsel was constitutionally ineffective in failing to claim on appeal that his trial counsel were constitutionally ineffective in not objecting on this ground at trial.

The record of Luckie's trial shows that Hurst's heroin charge stemmed from his arrest with Luckie less than a month before trial. This fact was discussed at Luckie's trial, albeit only outside the jury's presence. Thus, if Luckie's trial counsel had objected that Hurst's heroin charge, standing alone, was not probative of any relationship between Hurst and Luckie, the State likely would have responded by seeking leave to present evidence that Hurst and Luckie were together in the incident that resulted in Hurst's heroin charge, which would have been far more damaging to Luckie's defense. Moreover, the trial court likely would have given the State

leave to present such evidence. Luckie has not shown that his trial counsel's decision not to take that risk was objectively unreasonable, and he has not shown that, but for his trial counsel's decision not to object on this ground, there is a reasonable probability that the outcome of the trial would have been more favorable. As explained below, it follows that Luckie failed to show the prejudice necessary to prevail on this claim of ineffective assistance of appellate counsel. Accordingly, we affirm the habeas court's judgment denying relief.[2]

1. On June 1, 2004, Luckie was arrested for suspected drug possession. He was later charged by accusation with unlawfully possessing heroin with intent to distribute and abandoning a controlled substance in a public place. See OCGA §§ 16-13-3, 16-13-30 (b). At a trial on April 5 and 6, 2005, a Fulton County jury found him guilty of both charges.

---

[2] In his brief to this Court, Luckie also claims that the State violated his substantial rights at trial by presenting evidence of his silence upon arrest. But Luckie did not raise this claim in the habeas court, and we therefore do not address its merit (or the lack thereof). See *Humphrey v. Walker*, 294 Ga. 855, 871 n.11 (757 SE2d 68) (2014). See also *Cutter v. Wilkinson*, 544 U. S. 709, 718 n.7 (125 SCt 2113, 161 LE2d 1020) (2005) ("[W]e are a court of review, not of first view . . . .").

The record of Luckie's trial shows the following. Shortly after 10:00 p.m. on June 1, 2004, three Atlanta Police Department ("APD") officers were on patrol in the 500 block of James P. Brawley Drive, a residential area known for drug trafficking. The officer who was driving spotted Luckie walking alone across a vacant lot on the southeast corner of the intersection of James P. Brawley Drive and North Avenue and shined the patrol car's spotlight on him. Luckie, who was five to ten yards away, stopped walking, turned the front of his body toward the patrol car, reached behind his back, and surreptitiously threw a clear plastic sandwich bag on the ground. The officers immediately exited the patrol car, detained Luckie, and retrieved the plastic sandwich bag, which was in plain view. The officers examined the sandwich bag, which held 13 smaller plastic baggies containing a white, powdery substance, and then arrested Luckie. Forensic testing showed that the substance in the baggies was heroin.

At trial, two of the three arresting officers testified, as did the forensic chemist who tested the substance in the baggies. Both

testifying officers referred during their testimony to a contemporaneous police report to refresh their recollections about certain details, although the report itself was not admitted into evidence. The State also introduced the plastic sandwich bag with the 13 smaller plastic baggies inside that Luckie had thrown on the ground. In addition, the State presented evidence of a similar transaction on April 23, 2004, less than six weeks before the arrest that led to the charges on trial.[3] A different APD officer testified that he arrested Luckie on the same block after watching Luckie and

---

[3] At a hearing before opening statements, the trial court ruled that evidence of the April 2004 incident was admissible as similar transaction evidence to show Luckie's "bent of mind" and "course of conduct." See former OCGA § 24-2-2 ("The general character of the parties and especially their conduct in other transactions are irrelevant matter *unless* the nature of the action involves such character and renders necessary or proper the investigation of such conduct." (emphasis supplied)). At the same hearing, the court declined to admit evidence that on March 9, 2005, officers executing a search warrant based on a controlled drug buy from a house across the street from the vacant lot where Luckie was arrested on June 1, 2004, found Luckie and Hurst inside the house, along with six bags of heroin, a bag of crack cocaine, and a bag of marijuana. The trial court said that although evidence of the March 2005 incident was not admissible as similar transaction evidence, it "may be admitted at a later point in rebuttal if it comes up." Under the new Evidence Code, the admission of "[e]vidence of other crimes, wrongs, or acts" is governed by OCGA § 24-4-404 (b). See *Humphrey v. Williams*, 295 Ga. 536, 539 n.2 (761 SE2d 297) (2014). "Bent of mind" and "course of conduct" are not part of the new Evidence Code. See *Olds v. State*, 299 Ga. 65, 69 n.6 (786 SE2d 633) (2016).

another man attempt to sell drugs to the driver of a vehicle stopped in the middle of the street. The officer said that he retrieved a plastic bag holding 19 smaller plastic baggies containing heroin from a garbage can where Luckie threw the bag after the man working with Luckie spotted the officer. The forensic chemist who confirmed that the substance in the baggies was heroin also testified, and the plastic bag containing the 19 smaller plastic baggies was admitted into evidence. The State then rested its case.

In earlier discussions held outside the jury's presence, the State said that if Luckie called Hurst as a witness, the State planned to ask Hurst about his pending heroin charge stemming from his arrest with Luckie less than a month before trial to show Hurst's motive in testifying for Luckie. The defense moved to preclude this line of cross-examination. During the course of these discussions, the following exchange occurred:

> COURT: All right. Make your argument. The issue is may the State cross-examine a defense witness who has the same pending criminal charge as the defendant or who was a co-defendant with the defendant. It's not like an independent crime. It's a crime that has something to do

with the defendant. Am I right?
STATE: Yes.
DEFENSE: Yes.
COURT: Okay. What's your argument?
DEFENSE: Your Honor, I would ask that the State not be allowed to ask my witness [i.e., Hurst] any question that brings my client's [i.e., Luckie's] character into evidence.

When prompted by the court, the defense also objected on the ground that Hurst had not been convicted. The State responded that the testimony elicited by the cross-examination would show a relationship between Hurst and Luckie and, therefore, would be probative of a motive for Hurst to shade his testimony in Luckie's favor. Perhaps to address the defense's concern about bringing in Luckie's character, the State added, "We do not plan to ask about Mr. Luckie, just the fact that . . . the witness has an open pending case for possession of heroin here in Fulton County."

The trial court ruled that if the defense called Hurst as a witness, the State could cross-examine Hurst about his pending heroin charge to show the relationship between Hurst and Luckie. The trial court based its ruling on former OCGA § 24-9-68, which, as noted above, said: "The state of a witness's feelings toward the

parties and his relationship to them may always be proved for the consideration of the jury."[4]

Luckie elected not to testify at trial. He did, however, call two defense witnesses, Hurst and Calvin Arnold. Hurst and Arnold both testified that on June 1, 2004, they spent the day working on several properties with Luckie after meeting up with him between 8:30 and 9:00 a.m. at a house across the street from the vacant lot where Luckie was later arrested. According to Hurst and Arnold, the three men arrived back at the intersection of James P. Brawley Drive and North Avenue at about 8:30 p.m.; there were scores of people in the area for a nearby wake; and Luckie had walked to a nearby apartment complex to get a quick haircut and was walking back across the lot on the southeast corner of the intersection between 8:30 and 9:00 p.m. when a patrol car pulled up. Hurst and Arnold said that when the patrol car pulled up, Luckie stopped walking, threw down the cigarette he was smoking, and put up his hands.

---

[4] As stated in footnote 1 above, this provision of the old Evidence Code was carried forward into the new Evidence Code without substantive change. See OCGA § 24-6-622.

Hurst and Arnold also said that they left five to fifteen minutes later after the officers put Luckie on the ground and handcuffed him and that they did not see Luckie throw down anything other than the cigarette. Hurst added that, before he and Arnold left, he saw the officers walk back over to where they first grabbed Luckie and that the officers were "just walking around . . . looking for something" on the ground.

On cross-examination, Hurst and Arnold acknowledged that they did not come forward until the day before the trial started and did so together, and they admitted that they were uncertain about the date of the events that they described.[5] In accordance with the trial court's earlier ruling, the State ended its cross-examination of

---

[5] When the State asked Arnold, "What date was this that this occurred?," he replied, "That's a good question. I don't recall the date. I just recall the time it happened because [Luckie] had worked with me that day. It's been quite a while back." When the State asked Hurst, "Sir, what was the date this happened?," he replied, "June 1st." The State then asked Hurst how he remembered the date, and Hurst responded, "To be honest, just because she [i.e., Luckie's lead trial counsel] asked me, and they told me that. So I'm just, you know, being totally honest with you." The State then said, "All right. So do you remember what date this happened?," and Hurst replied, "No, not really. You know, I'm going by y'all got it on paper and everything. So I figured I knew it was in June. You know, I ain't sure about the date, but I knew it was in June."

Hurst by asking him about his pending heroin charge. The exchange was as follows:

> STATE: Mr. Hurst, isn't it true that you have a pending possession of heroin with intent to distribute indictment against you here in Fulton County Superior Court?
> HURST: I'm accused of that.
> STATE: And it's currently pending in Fulton County Superior Court?
> HURST: Yeah.
> STATE: And you're here testifying today for Mr. Luckie; is that correct?
> HURST: Yeah.

As promised, the State did not ask Hurst about the fact that Luckie was with him in the incident that led to Hurst's heroin charge. Luckie's trial counsel did not object that the testimony elicited was not probative of any relationship between Hurst and Luckie.

During closing arguments, the State asserted that Hurst's testimony was not credible for several reasons, including because Hurst was "Luckie's friend" and had "an interest in the outcome of this case." The State also argued:

> Mr. Hurst is here to testify for his friend. Mr. Hurst knows he's got a pending heroin case, and he might need some help with his pending possession of heroin with intent to distribute. Let's stick together. [That's his]

interest in testifying.

The State briefly returned to the point a few minutes later, telling the jury, "Mr. Hurst is here for a friend. He's going to need help one day."

The jury found Luckie guilty of unlawfully possessing heroin with intent to distribute, a felony, and abandoning a controlled substance in a public place, a misdemeanor. The State asked the trial court to sentence Luckie to serve 40 years in prison, with the entire term in confinement, due to his extensive criminal record. The defense asked for the minimum sentence possible, arguing that Luckie had just turned 40 years old, that he had a drug addiction and needed treatment, and that he had numerous children to support. The trial court sentenced Luckie as a recidivist to serve 30 years in prison for the heroin conviction, with the first 25 years in confinement and the balance on probation, and 12 months concurrent for the misdemeanor conviction. The court then dead-docketed Luckie's pending charges from the incidents in April 2004 and March 2005.

Luckie appealed with new counsel, asserting as his sole enumeration of error that the trial court abused its discretion in permitting the State to elicit testimony from Hurst about Hurst's pending heroin charge based on former OCGA § 24-9-68, because Hurst's testimony did not refer to the fact that the heroin charge stemmed from a recent incident in which Hurst and Luckie were arrested together. As the Court of Appeals noted,

> no one pointed out to the trial judge the rather obvious impossibility of proving a relationship between Hurst and Luckie by asking questions about Hurst having been arrested on another occasion *without* making any mention of the fact that Luckie too was present and arrested at the same time.

*Luckie*, 310 Ga. App. at 860 (emphasis in original).

The Court of Appeals nevertheless affirmed Luckie's convictions, explaining:

> Although Luckie might well be right that the specific testimony elicited at trial was not probative of any motive to testify favorably for Luckie, he did not raise this argument below, and, for this reason, he has failed to properly preserve the issue for our review.

*Luckie*, 310 Ga. App. at 859. Finally, noting that "Luckie never

argued in the trial court that the testimony elicited by the cross-examination at issue was not probative of any relationship between him and Hurst," id. at 863, the Court of Appeals added the following observation:

> If Luckie had made such an objection, the trial court might have granted the motion [to bar the proposed cross-examination]. Or perhaps the State would have then changed course and asked for leave to elicit testimony showing that, when Hurst was arrested, so was Luckie, which would have allowed Luckie to object that, although such testimony might be probative of their relationship, it was too prejudicial to be admitted. And perhaps the trial court would have disallowed the proposed cross-examination on that basis. But nothing like that occurred at trial, and we will not reverse a judgment based on speculation about what might have occurred if a proper objection had been raised.

Id. at 863 n.5. We denied Luckie's petition for certiorari. See S11C1803 (Nov. 30, 2011).

In 2015, Luckie filed a habeas petition, which he later amended, alleging among other things that his appellate counsel was constitutionally ineffective in failing to raise on appeal his trial counsel's ineffectiveness in not objecting to the State's cross-examination of Hurst on the right ground. On April 26, 2016, the

habeas court held a hearing on Luckie's petition but continued the hearing so that the warden could secure the attendance of Luckie's appellate counsel; Luckie did not object to the continuance. On June 21, 2016, the habeas court resumed the hearing on Luckie's petition. The only witness called by either side was Luckie's appellate counsel. The warden asked Luckie's appellate counsel if he saw any merit to a claim that Luckie's trial counsel were ineffective for not objecting that the cross-examination of Hurst about his pending heroin charge was not probative of any relationship between Hurst and Luckie. Luckie's appellate counsel replied:

> Well, . . . that's the issue I did raise. I thought it was properly preserved. I thought that the trial attorney did object, so that's why I didn't raise it as an ineffective claim. I raised it as the main non-ineffective claim, because I thought the error was properly preserved. Obviously, if it wasn't properly preserved, then I should have alleged that the trial attorney was ineffective, but I thought that the trial attorney properly objected.

On June 1, 2017, the habeas court entered a final order denying Luckie's habeas petition. As relevant here, the habeas court said:

> As the Court of Appeals noted in a footnote, there would have been several possible outcomes had trial

counsel made this specific objection. Such speculation is insufficient to establish prejudice under *Strickland* [*v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)]. Because Petitioner cannot show a reasonable probability that the result of the appeal would have been different had appellate counsel raised this issue, he has failed to show that he was prejudiced.

(Citations omitted.)

2. Luckie contends that the habeas court erred in rejecting his claim of ineffective assistance of appellate counsel. "In reviewing the grant or denial of a petition for habeas corpus, this Court accepts the habeas court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts." *Henderson v. Hames*, 287 Ga. 534, 536 (697 SE2d 798) (2010).

To prevail on an ineffective assistance of appellate counsel claim based on the quality of the representation, a habeas petitioner must show both deficient performance by appellate counsel and resulting prejudice. See *Strickland*, 466 U. S. at 687. See also *Smith v. Robbins*, 528 U. S. 259, 285-286 (120 SCt 746, 145 LE2d 756) (2000) (holding that *Strickland* provides proper standard for

evaluating claims of attorney error on appeal). Thus, a habeas petitioner must show that his appellate counsel was professionally deficient in failing to raise a particular issue on appeal and that, but for appellate counsel's error, there is a reasonable probability that the outcome of the appeal would have been more favorable. See *Gramiak v. Beasley*, 304 Ga. 512, 513 (820 SE2d 50) (2018). When a habeas petitioner claims that appellate counsel was professionally deficient in not raising ineffective assistance of trial counsel, to establish prejudice, "the petitioner must demonstrate that the underlying ineffectiveness-of-trial-counsel claim would have had a reasonable probability of success." See *Cartwright v. Caldwell*, 305 Ga. 371, 378 (825 SE2d 168) (2019). Accord *Rozier v. Caldwell*, 300 Ga. 30, 32 (793 SE2d 73) (2016). In other words, to establish the prejudice required to prevail on this type of ineffective assistance of *appellate* counsel claim, a habeas petitioner must show that his *trial* counsel's performance was professionally deficient and that the deficiency resulted in prejudice to his case. See *Cartwright*, 305 Ga. at 378; *Gramiak*, 304 Ga. at 513. See also *Strickland*, 466 U. S. at

687.

To establish deficient performance by trial counsel, a habeas petitioner must show that his counsel's acts or omissions were objectively unreasonable, considering all the circumstances at the time and in the light of prevailing professional norms. See *Strickland*, 466 U. S. at 687-690. In particular, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Reed v. State*, 294 Ga. 877, 882 (757 SE2d 84) (2014). To establish prejudice, a habeas petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694. "This burden, though not impossible to carry, is a heavy one." *Arnold v. State*, 292 Ga. 268, 270 (737 SE2d 98) (2013). Luckie failed to carry his burden here.

Luckie contends that his trial counsel were professionally

deficient in not objecting to the State's proposed cross-examination of Hurst about Hurst's pending heroin charge once the State said that it did not plan to ask about Luckie. Luckie bases his argument on what the Court of Appeals described as "the rather obvious impossibility of proving a relationship between Hurst and Luckie by asking questions about Hurst having been arrested on another occasion *without* making any mention of the fact that Luckie too was present and arrested at the same time." *Luckie*, 310 Ga. App. at 860 (emphasis in original). But deciding which objections to make and which objections to refrain from making is a matter of trial strategy and tactics. See *Birdow v. State*, 305 Ga. 48, 56 (823 SE2d 736) (2019); *Brown v. State*, 302 Ga. 454, 457-461 (807 SE2d 369) (2017). Luckie did not call either of his trial counsel to testify at his habeas hearings, and he did not present any other evidence of their reasons for not objecting on the ground that Hurst's heroin charge, standing alone, was not probative of any relationship between Hurst and Luckie. The United States Supreme Court has instructed that courts reviewing ineffective assistance of trial counsel claims "must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U. S. at 689 (citation omitted). Thus, "when trial counsel does not testify . . . , it is extremely difficult to overcome the presumption that his conduct was reasonable." *Shaw v. State*, 292 Ga. 871, 876 (742 SE2d 707) (2013) (citation and punctuation omitted).

The habeas court had before it the transcript of Luckie's trial, which shows that the trial court had several discussions with the parties and their counsel outside the presence of the jury about the March 2005 incident. It was clear from those discussions that on March 9, 2005 – less than a month before Luckie's trial started – Hurst was, in fact, with Luckie in the incident that led to Hurst's pending heroin charge. See footnote 3 above; *Sherman v. City of Atlanta*, 293 Ga. 169, 173-174 (744 SE2d 689) (2013) ("Attorneys are officers of the court and a statement to the court in their place is

prima facie true and needs no further verification unless the same is required by the court or the opposite party." (citation, punctuation and emphasis omitted)). See also *Anthony v. State*, 298 Ga. 827, 830 (785 SE2d 277) (2016) (quoting *Sherman*); *Harvey v. State*, 284 Ga. 8, 11 (660 SE2d 528) (2008) (holding that "'[t]here is no *per se* right to an evidentiary hearing, only to a hearing, nor any mandatory obligation to produce testimonial evidence'" at a pretrial hearing to determine admissibility of similar transaction evidence (citation omitted)). The record also shows that trial counsel were especially (and understandably) concerned about the impact on Luckie's defense if the jury learned that he was implicated in yet another incident in the same area involving suspected drug crimes less than a month before trial. Luckie's trial counsel reasonably could have concluded that if they objected to the State's proposed cross-examination of Hurst on the ground that Hurst's heroin charge, standing alone, was not probative of any relationship between Hurst and Luckie, the State likely would have responded by asking for leave to elicit testimony showing that Luckie was with Hurst in the

incident that resulted in Hurst's pending heroin charge. We cannot say that it was patently unreasonable for trial counsel to decide not to take that risk. See *Brown*, 302 Ga. at 462.

Moreover, had trial counsel objected on this ground, and had the State responded by seeking leave to present evidence that Hurst and Luckie were together in the incident that led to Hurst's pending heroin charge, the trial court likely would have permitted the State to do so. See former OCGA § 24-9-68; *Rivers v. State*, 296 Ga. 396, 402 (768 SE2d 486) (2015) ("It is proper for the State when cross-examining a defense witness to bring out the relationship between the witness and the accused for the purpose of showing bias . . . . In conducting such a cross-examination, the State did not place appellant's character in issue in the sense that the evidence must be proscribed, even though the evidence may have incidentally done so.").[6] Thus, Luckie failed to show that, but for trial counsel's alleged

---

[6] See also *Virger v. State*, 305 Ga. 281, 294-295 (824 SE2d 346) (2019), slip op. at 28-30 (finding no abuse of discretion where trial court allowed appellant's co-defendant to question appellant's defense witness about witness' prior difficulties with appellant, because prior difficulties are admissible under

deficient performance, there is a reasonable probability that the outcome of his trial would have been more favorable. See *Flannigan v. State*, 305 Ga. 57, 61 (823 SE2d 743) (2019) ("Flannigan has not shown a reasonable probability that, if trial counsel had objected to [an expert witness'] qualifications, the State would not have been able to qualify [him] as an expert and the trial court would have sustained an objection to [his] expert testimony. Flannigan therefore has failed to establish prejudice on this claim of ineffective assistance."); *Redwine v. State*, 280 Ga. 58, 62 (623 SE2d 485) (2005) (holding that defendant failed to show *Strickland* prejudice from trial counsel's failure to object to admission of defendant's pretrial statement to police when there was "no reasonable probability that an objection would have kept the statement from being admitted").

Luckie failed to show in the habeas court that his underlying

OCGA § 24-6-622 of new Evidence Code); *Perdue v. State*, 126 Ga. 112, 113 (54 SE 820) (1906) ("Where on the trial of a man charged with murder a woman testified in his behalf, it was competent to impeach her by evidence tending to show that she was the paramour of the defendant,– not to impeach her by reason of the immorality, but to show her intimate relations with the accused and her probable bias as a witness.").

ineffective-assistance-of-trial-counsel claim had a reasonable probability of success. As a result, Luckie also failed to show the prejudice required to prevail on his claim of ineffective assistance of appellate counsel, and the habeas court properly rejected this claim in denying Luckie's habeas petition.

Judgment affirmed. All the Justices concur.

Decided April 29, 2019.

Habeas corpus. Bibb Superior Court. Before Judge Simms.

Sarah L. Gerwig-Moore, Meagan Hurley, E. Addison Gantt, J. Scott Key, for appellant.

Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.