314 Ga. 798
FINAL COPY

S22A1037.  BEAMON v. THE STATE.

BETHEL, Justice.

After a jury trial, Vernon Beamon was convicted of malice murder and other crimes in connection with the shooting deaths of Sylvia Watson and Samuel White. Beamon appeals, arguing that the evidence presented at trial was insufficient to support his convictions and that his convictions for possession of a firearm by a convicted felon and possession of a firearm during the commission of a felony should have merged.[1] We disagree with both contentions

---

[1] Watson and White were killed in October 2016. A DeKalb County grand jury indicted Beamon and Christopher Leonard Spencer in April 2017 on two counts of malice murder (Counts 1 and 2); seven counts of felony murder (Counts 3-9); kidnapping (Count 10); two counts of armed robbery (Counts 11 and 12); two counts of aggravated assault (Counts 13 and 14); first degree burglary (Count 15); possession of a firearm during the commission of a felony (Count 16); and violation of the Street Gang Terrorism and Prevention Act (Count 22) in connection with the shooting deaths of Watson and White. Spencer was also charged individually with two counts of criminal attempt to commit a felony (financial transaction card fraud) (Counts 17 and 18), and Beamon was charged individually with two additional counts of felony murder (Counts 19 and 20) and possession of a firearm by a convicted felon (Count 21).

and affirm.

1. As recounted by this Court in *Spencer v. State*, 308 Ga. 656 (842 SE2d 845) (2020), the evidence presented at the joint jury trial showed as follows.

---

Beamon and Spencer were tried together in May 2017. As to both defendants, the trial court directed a verdict of acquittal as to armed robbery (Counts 11 and 12) and the felony murder counts predicated on armed robbery (Counts 4 and 5), and the jury found Beamon and Spencer guilty on all the remaining counts for which they were charged. Spencer was sentenced to two consecutive terms of life in prison without the possibility of parole on Counts 1 and 2 and additional sentences of 30 years. His convictions and sentences were affirmed by this Court in *Spencer v. State*, 308 Ga. 656 (842 SE2d 845) (2020). The trial court sentenced Beamon to serve life in prison without the possibility of parole on Count 1; life in prison without the possibility of parole on Count 2; five years in prison on Count 16; five years in prison on Count 21; and 15 years in prison on Count 22, all of which are to be served consecutively. The felony murder counts were vacated by operation of law (Counts 3-9, 19 and 20), and the trial court merged the kidnapping count (Count 10), aggravated assault counts (Counts 13 and 14), and burglary count (Count 15) with the malice murder counts (Counts 1 and 2).

Beamon timely filed a motion for a new trial on May 30, 2017, which he later amended through new counsel. Beamon waived a hearing on his motion, and the trial court denied the motion, as amended, on September 21, 2021, but determined that the sentences for kidnapping and burglary were improperly merged and that Beamon should be resentenced. Beamon filed a notice of appeal on September 30, 2021, and that appeal was dismissed by this Court because he had not yet been resentenced on the kidnapping and burglary counts. On February 23, 2022, the trial court held a resentencing hearing on those two counts and resentenced Beamon to 20 years concurrent for kidnapping (Count 10) and 20 years concurrent for burglary (Count 15). On March 29, 2022, Beamon timely filed a notice of appeal. His case was docketed to the August 2022 term of this Court and submitted for a decision on the briefs.

2

Viewed in the light most favorable to the verdict, the evidence presented at trial shows that Spencer and . . . Beamon were members of a criminal street gang known as the "Rolling 20s." On the morning of October 24, 2016, they went to a DeKalb County apartment complex, where Watson and White shared a residence. As Watson was returning home from a medical appointment, a surveillance video camera recorded her silver Honda Civic enter the complex, around the same time as Beamon's blue Ford Expedition. The same camera recorded the Civic leaving the complex about seven minutes later, but this time, the recording showed two male passengers with Watson, including a man wearing a sweatshirt in the back seat.

During the course of the next hour, Watson's bank card was used at four nearby ATMs. Surveillance cameras recorded the man in the sweatshirt attempting to use Watson's bank card at several of the ATMs. Watson's card was used at the fourth ATM at 10:54 a.m., and video surveillance recorded her car returning to her apartment complex at 11:22 a.m. About an hour later, the same camera recorded Beamon's Expedition leaving the complex.

That evening, the bodies of Watson and White were discovered in their apartment. Each of them had been shot in the head, and their home had been burglarized. Two .380 cartridge casings were found near their bodies.

A few days later, one of White's family members discovered a bank withdrawal receipt in the Civic that was dated the day of the murders. After the police were notified, they searched the Civic and found a green plastic cup in the back seat. A latent fingerprint on that cup was entered into AFIS (the Automated Fingerprint Identification System) and matched Spencer's fingerprints. Soon thereafter, police conducted a search of

3

the apartment that served as the gang house for the "Rolling 20s." In addition to a large amount of gang paraphernalia, police officers discovered a Bryco .380 semiautomatic pistol that was later determined to have been the weapon used to kill Watson and White. Spencer was arrested at the gang house, and the sweatshirt he was wearing (which resembled the one depicted in the surveillance video recordings) tested positive for gunshot residue.

Beamon was arrested a few weeks later in Mississippi. Beamon told police officers that he "barely knew" Spencer, but phone records showed that they had contacted each other numerous times before and after the day of the murders. Finally, cell phone records placed Spencer's and Beamon's phones near Watson and White's apartment and the various ATMs (as well as at the gang house) on the day of the murders.

Id. at 656-657.

Data from Beamon's cell phone also showed that in the early morning hours after the murders, Beamon was searching for breaking news and viewed a story about a fatal double shooting in the area. When he was interviewed by police, Beamon said that he was staying at the gang house around the time of the murders but that he was with Vanita Cooper on the evening of October 24 and stayed with her until 1:00 p.m. the following day. However, Cooper testified that she did not see Beamon on October 24. Finally, a

4

detective with knowledge of the gang testified that committing robberies and bringing money back to the gang house would give gang members status.

2. Beamon first argues that the evidence presented at trial was legally insufficient to support his convictions. More specifically, Beamon argues that the direct evidence in the case linked Spencer to the crimes instead of him and that the circumstantial evidence against him was insufficient because the State did not prove that he drove his SUV into the apartment complex or used his phone around the time of the murders. Beamon further argues that the State failed to establish that he otherwise participated in or was a party to the crimes; failed to prove that he had the specific intent to commit murder or to enter the victims' apartment, or that the murders were committed with the requisite malice; and failed to establish that he participated in the alleged crimes to further the gang's purpose.

We disagree.[2]

---

[2] While Beamon alleges that the evidence presented at trial was insufficient to sustain all of the jury's guilty verdicts, his challenges to the

5

> When evaluating a challenge to the sufficiency of the evidence [as a matter of constitutional due process], we view all of the evidence presented at trial in the light most favorable to the verdict[s] and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted.

*Jones v. State*, 304 Ga. 594, 598 (2) (820 SE2d 696) (2018) (citing *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)). "We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts, and we do not reweigh the evidence." (Citations and punctuation omitted.) *Harris v. State*, 313 Ga. 225, 229 (2) (869 SE2d 461) (2022).

Further, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a).

> A party to a crime is one who intentionally aids or abets the commission of the crime, or intentionally advises, encourages, hires, counsels, or procures another to commit the crime . . . . Whether a person is a party to a

felony murder and aggravated assault counts are moot because those counts were merged or vacated by operation of law, and no sentence was entered on them. See *Collett v. State*, 305 Ga. 853, 855 (1) n.2 (828 SE2d 362) (2019).

crime may be inferred from that person's presence, companionship, and conduct before, during, and after the crime.

(Citation and punctuation omitted.) *Williams v. State*, 304 Ga. 658, 661 (1) (821 SE2d 351) (2018). "Whether a defendant was a party to a crime is a question for the fact-finder." *Coggins v. State*, 275 Ga. 479, 480 (1) (569 SE2d 505) (2002).

As a matter of Georgia statutory law, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. "Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable." (Citation and punctuation omitted.) *Cochran v. State*, 305 Ga. 827, 829 (1) (828 SE2d 338) (2019). Whether alternative hypotheses are reasonable, however, is usually a question for the jury, and this Court will not disturb the jury's finding unless it is insufficient as a matter of law. See *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019).

Beamon argues that the State did not introduce physical evidence from the crime scene that directly linked him to the murders. However, that does not mean that the evidence presented was insufficient. "[A]lthough the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." (Citation and punctuation omitted.) *Rich v. State*, 307 Ga. 757, 759 (1) (a) (838 SE2d 255) (2020). See also *Cochran*, 305 Ga. at 830 (1) (same). Further, to the extent Beamon's assertion of error amounts to an attack on the strength or credibility of the circumstantial evidence against him, it is well settled that "it is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted.) *Graham v. State*, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017). The alleged faults with the evidence go to its weight, and Beamon's argument "is based on nothing more than his disagreement with the . . . determinations made by the jury" about

8

how to reasonably weigh the evidence. (Citation and punctuation omitted.) *Spencer*, 308 Ga. at 658.

Moreover, even though there was no direct evidence of Beamon's guilt, the circumstantial evidence presented at trial allowed the jury to infer that Beamon was a party to the crimes committed. In particular, the evidence showed that Beamon and Spencer were active members of the same gang — the "Rolling 20s" — and that on the morning of October 24, Beamon's SUV entered the victims' complex around the same time that Watson was returning home. A few minutes later, Watson's vehicle left the complex with two male passengers — one of whom was later determined to be Spencer. Watson's bank card was then used at several ATMs before her car returned to the complex. Beamon's car then left the complex about an hour later. Watson and White's bodies were discovered later that evening in their burglarized apartment. Cell phone records placed Beamon's phone near the victims' apartment, the various ATMs, and the gang house on the day of the murders. Data extracted from Beamon's cell phone also

showed that in the early morning hours after the murders, Beamon was searching for breaking news and viewed a story about a fatal double shooting in the area. Beamon told the police that he "barely knew" Spencer, but his phone records showed that there were multiple calls between him and Spencer before and after the murders. Beamon also told the police that while he was staying at the gang house around the time of the murders, he was with Cooper on the evening of October 24 until 1:00 p.m. the following day, which Cooper later denied. And the State presented evidence that committing robberies and bringing money back to the gang house would give gang members status.

Based on this evidence, the jury was free to reject as unreasonable the possibility that some other unidentified person was using Beamon's SUV and phone and that this unidentified individual was the second man seen in the vehicle. Instead, the jury could reasonably infer that Beamon was involved and shared the requisite intent to commit the crimes with Spencer. See *Tyler v. State*, 311 Ga. 727, 733 (2) (859 SE2d 73) (2021) ("The jury was

10

authorized to accept the State's theory of the crimes and was not required to conclude that the hypothesis proposed by [the defendant] that someone else committed the crimes was reasonable."); *Daniels v. State*, 298 Ga. 120, 123 (1) (779 SE2d 640) (2015) (noting that the jury was authorized to reject the alternate theoretical possibility that an unknown individual committed the homicide as unreasonable where the evidence suggested otherwise).

Additionally, the jury could infer from the evidence that the crimes were committed with the intent to further the interests of the gang, which is a required showing under the Street Gang Terrorism and Prevention Act.[3] See, e.g., *Jackson v. State*, 306 Ga. 706, 709 (1) (b) (832 SE2d 809) (2019) (noting that in order to convict the defendant, the State had to prove beyond a reasonable doubt that the defendant was associated with a gang, which was a "criminal street gang," and that he committed the predicate crimes, which

---

[3] See OCGA §§ 16-15-4 (a) ("It shall be unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of any offense enumerated in paragraph (1) of Code Section 16-15-3"); 16-15-3 (1) (J) (enumerated offenses include any criminal offense that involves violence or the use of a weapon).

11

were intended to further the interests of the gang). The jury could infer from the evidence of Beamon's association with the "Rolling 20s," his communication with Spencer, who was also a fellow gang member, before and after the murders, and the cell phone records that placed them at the gang house where a "large amount of gang paraphernalia" was discovered on the day of the crimes that the murders were committed in order to obtain status within the gang. See, e.g., *Hayes v. State*, 298 Ga. 339, 343 (a) (781 SE2d 777) (2016) (evidence of defendant's association with the gang and participation in gang's activities before and during the crimes "in order to obtain money, power, and respect" for gang members provided required nexus between criminal acts and intent to further gang interests by committing crimes).

Thus, viewed in the light most favorable to the verdicts, the evidence presented at trial supports the jury's guilty verdicts on the counts for which Beamon was convicted and was therefore sufficient as a matter of due process.[4] See *Jackson*, 443 U. S. at 319 (III) (B).

---

[4] Beamon stipulated to his status as a convicted felon.

12

Moreover, although the State's case was circumstantial, the evidence presented at trial was sufficient under OCGA § 24-14-6 because the jury could determine that the evidence excluded other reasonable hypotheses regarding the victims' deaths. This enumeration of error therefore fails.

3. Beamon next argues that the trial court should have merged the count for possession of a firearm by a convicted felon under OCGA § 16-11-131 (b)[5] (Count 21) into the count for possession of a firearm during the commission of a felony under OCGA § 16-11-106[6]

---

[5] OCGA § 16-11-131 (b) provides:

Any person who is on probation as a felony first offender pursuant to Article 3 of Chapter 8 of Title 42, who is on probation and was sentenced for a felony under subsection (a) or (c) of Code Section 16-13-2, or who has been convicted of a felony by a court of this state or any other state; by a court of the United States including its territories, possessions, and dominions; or by a court of any foreign nation and who receives, possesses, or transports a firearm commits a felony and, upon conviction thereof, shall be imprisoned for not less than one year nor more than ten years; provided, however, that upon a second or subsequent conviction, such person shall be imprisoned for not less than five nor more than ten years; provided, further, that if the felony for which the person is on probation or has been previously convicted is a forcible felony, then upon conviction of receiving, possessing, or transporting a firearm, such person shall be imprisoned for a period of five years.

[6] As applicable here, OCGA § 16-11-106 (b) provides:

(Count 16) because both counts involve the use of a firearm to establish violations. We disagree.

In support of his argument, Beamon relies on *Atkinson v. State*, 301 Ga. 518, 521 (2) (801 SE2d 833) (2017), and *Jones v. State*, 318 Ga. App. 105, 109-110 (6) (733 SE2d 407) (2012). However, in both of those cases, the appellate courts determined that possession of a firearm during the commission of a felony under OCGA § 16-11-106 should have merged for sentencing purposes into a conviction for possession of a firearm by a convicted felon during the commission

---

Any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit . . . [a]ny crime against or involving the person of another; . . . [t]he unlawful entry into a building or vehicle; . . . [a] theft from a building or theft of a vehicle; . . . [a]ny crime involving the possession, manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any controlled substance or marijuana as provided in Code Section 16-13-30, any counterfeit substance as defined in Code Section 16-13-21, or any noncontrolled substance as provided in Code Section 16-13-30.1; or . . . [a]ny crime involving the trafficking of cocaine, marijuana, or illegal drugs as provided in Code Section 16-13-31, and which crime is a felony, commits a felony and, upon conviction thereof, shall be punished by confinement for a period of five years, such sentence to run consecutively to any other sentence which the person has received.

14

of a felony under OCGA § 16-11-133.[7] See *Atkinson*, 301 Ga. at 521

(2); *Jones*, 318 Ga. App. at 110 (6). Here, however, Beamon was not

charged under OCGA § 16-11-133 with possession of a firearm

during the commission of a felony based on his status as a felon.

Rather, Beamon was indicted on Count 16 for possession of a firearm

during the commission of a felony under OCGA § 16-11-106, and on

Count 21 for possession of a firearm by a convicted felon under

OCGA § 16-11-131 (b). And we have clearly held that possession of

---

[7] OCGA § 16-11-133 (b) provides:

> Any person who has previously been convicted of or who has previously entered a guilty plea to the offense of murder, murder in the second degree, armed robbery, home invasion in any degree, kidnapping, rape, aggravated child molestation, aggravated sodomy, aggravated sexual battery, or any felony involving the use or possession of a firearm and who shall have on or within arm's reach of his or her person a firearm during the commission of, or the attempt to commit . . . [a]ny crime against or involving the person of another; . . . [t]he unlawful entry into a building or vehicle; . . . [a] theft from a building or theft of a vehicle; . . . [a]ny crime involving the possession, manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any controlled substance as provided in Code Section 16-13-30; or . . . [a]ny crime involving the trafficking of cocaine, marijuana, or illegal drugs as provided in Code Section 16-13-31, and which crime is a felony, commits a felony and, upon conviction thereof, shall be punished by confinement for a period of 15 years, such sentence to run consecutively to any other sentence which the person has received.

15

a firearm by a convicted felon under OCGA § 16-11-131 (b) does not merge with possession of a firearm during the commission of a felony under OCGA § 16-11-106. See *Chester v. State*, 284 Ga. 162, 162 (1) (664 SE2d 220) (2008) (holding that guilty verdicts for possession of a firearm by a convicted felon and possession of a firearm during the commission of a felony do not merge), overruled on other grounds by *Williams v. State*, 287 Ga. 192, 193-194 (695 SE2d 244) (2010). See also *Scott v. State*, 190 Ga. App. 492, 495 (3) (379 SE2d 199) (1989) (noting that the offenses set forth in OCGA § 16-11-106 and OCGA § 16-11-131 (b) are "not included in the other, nor do they merge factually, because each involves proof of distinct essential elements" (punctuation omitted)). Accordingly, this enumeration of error fails.

*Judgment affirmed. All the Justices concur.*

Decided October 4, 2022.

Murder. DeKalb Superior Court. Before Judge Johnson.

*Debra K. Jefferson*, for appellant.

*Sherry Boston, District Attorney, Deborah D. Wellborn, C. Lance Cross, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Parisa F. Sarfarazi, Assistant Attorney General*, for appellee.