NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 21, 2023

S22A0893.  EVANS v. THE STATE.

BOGGS, Chief Justice.

Appellant Jonathan Tavarus Evans challenges his convictions for malice murder and other crimes in connection with the shooting death of Jamirus Wright and the non-fatal shooting of Brandon Martin. Appellant's only claim on appeal is that he was denied constitutionally effective assistance of counsel at trial due to his attorney's failure to introduce into evidence footage from the initial responding officers' body cameras containing statements by them that he claims would have lent support to his sole defense of justification. However, Appellant has not shown that his trial counsel's failure to introduce such evidence was objectively unreasonable. Thus, he has failed to show that his counsel's performance was constitutionally deficient, which is fatal to his

claim. Accordingly, we affirm.[1]

1. The evidence at trial showed the following. On Friday night, April 27, 2018, Martin visited Wright at Wright's mother's apartment in Augusta. The two men sat for hours on her patio drinking beers and talking about sports. At some point, their friend Angela Brooks, who lived in an adjacent building, stopped by. Wright and Martin eventually ran out of beer, and at around 3:00 a.m. on the morning of Saturday, April 28, 2018, Wright, Martin, and Brooks walked from the apartment complex to a nearby convenience store. The trip took between five and ten minutes.

---

[1] Wright and Martin were shot in the early morning hours of Saturday, April 28, 2018. On July 10, 2018, a Richmond County grand jury indicted Appellant for malice murder, felony murder, aggravated assault for shooting Martin, two counts of possession of a firearm during the commission of a felony, and possession of less than an ounce of marijuana. At a trial from March 3 to 6, 2020, the jury found Appellant guilty of all charges except for the marijuana possession count. The trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder and a total of 30 years consecutive for aggravated assault and the two firearm-possession convictions; the felony murder count was vacated by operation of law. On March 27, 2020, Appellant filed a motion for new trial, which he amended with new counsel on October 22, 2020, and again on May 13, 2021. The trial court held an evidentiary hearing on June 28, 2021, and entered an order denying the motion on January 14, 2022. Appellant filed a timely notice of appeal, and the case was docketed in this Court to the August 2022 term. The case was orally argued on November 8, 2022.

Surveillance footage from the convenience store showed Martin entering the convenience store at 3:07 a.m.; Wright and Brooks stayed outside and smoked a cigarette. Martin bought a 12-pack of beer and exited the store at 3:09 a.m. The three friends then walked back to the apartment complex, where Brooks went home while Wright and Martin resumed their positions sitting on Wright's mother's patio.

Appellant, who used to live in the same apartment complex as Wright's mother and Brooks, had previously gotten into a physical altercation with Wright and Martin, and he spotted Martin inside the convenience store. At 3:10 a.m., approximately one minute after Martin exited the store, Appellant did the same. Appellant looked in the direction that Martin went before abruptly turning around and going back inside the store. He emerged from the store just 30 seconds later with a pair of clear latex gloves in his hand and got into the driver's seat of a black 2017 Honda Civic that was parked in front of the store. Appellant waited in the parked car for several minutes, and at 3:16 a.m., he drove to the apartment complex.

Martin testified that he saw Evans drive to a nearby building in the apartment complex and get out of his car. According to Martin, Evans then got back in his car, drove by the patio on which he and Wright were sitting, and parked his car in front of Wright's mother's apartment. Martin testified that Evans got out of his car, and started firing at Martin and Wright. Several rounds struck the iron railing in front of the patio and fragmented into shrapnel that ricocheted in all directions. Wright sustained multiple lacerations from the metal shrapnel, including one jacket fragment that sliced through the right side of his throat and severed his carotid artery, killing him. Martin was struck in the back of the leg, between his buttocks and the back of his knee, but he was able to crawl inside the apartment and call 911. Martin was in so much pain that he could not effectively communicate with the 911 operator, so he handed the phone to Wright's mother, who was awakened by the gunfire and finished the call.

Later that same day, officers from the Richmond County Sheriff's Office arrested Appellant at his girlfriend's apartment after

using the convenience store surveillance footage to determine the license plate number of the car that Appellant had been driving. Appellant was taken into custody, where he was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966), and agreed to speak to law enforcement officers after signing a written waiver of his rights. Investigator Lucas Grant, the lead investigator, interviewed Appellant, and a video recording of the interview was later played for the jury. In the interview, Appellant said that Wright and Martin saw him parked at the apartment complex and "talked s**t" to him and that Wright pointed a gun at him and said that he was going to shoot Appellant's "b**ch a**." Appellant admitted that Wright did not fire any shots at him but said that he was scared for his life and that he fired four shots from his rifle at Wright and Martin.

Although law enforcement officials found a black cell phone that belonged to Wright on the patio of the apartment, they found no gun or bullets on the patio or inside the apartment, and no evidence that any shots had been fired from those locations. Further,

5

Martin testified that neither he nor Wright had a firearm, and Wright's mother testified that her son and Martin had never owned firearms. Brooks also testified that she did not see Martin with a gun that night and that Martin and Wright have "never been the type to carry a weapon." Law enforcement officials recovered four bullet casings from the location from which Appellant fired at Wright and Martin, which was about 100 feet in front of Wright's mother's apartment. Forensic evidence showed that those casings were fired from Appellant's SKS rifle, which a law enforcement official recovered from one of Appellant's friends. At trial, the jury was instructed on the law of justification and self-defense

2.  Appellant's sole claim on appeal is that he was denied constitutionally effective assistance of counsel at trial. We disagree.

(a) As background, in an amended motion for new trial, Appellant contended that trial counsel was constitutionally ineffective by failing to present evidence of audio and video recordings made by the initial responding officers' body cameras, which, according to Appellant, would have supported his claim of

6

self-defense.

At the motion for new trial hearing, Appellant introduced the body-camera recordings of several of the officers. The recordings were made before law enforcement officials became aware of Appellant's role in the shooting and before evidence was discovered showing that Appellant had fired four shots toward Wright and Martin while standing about 100 feet away from the patio. In the recordings, the officers said that the bullets were not fired "from . . . outside" the apartment, but instead "came from the inside." One officer said "[a]ll that sh*t happened inside," and another said, "I think so too." They also expressed concern that Martin "knows something and isn't saying anything"; that "[m]aybe [Martin and Wright] shot each other"; and that Wright's mother "had plenty of time to hide the guns."

At the motion for new trial hearing, trial counsel testified that the defense at trial was that Wright and Martin "became verbally abusive" to Appellant and that Appellant thought that "one of the individuals was holding up what [Appellant] thought was a gun,"

7

prompting Appellant to fire in self-defense. Counsel added that he did not need any particular evidence to be able to argue to the jury that there was time, before law enforcement officials arrived at the scene, for someone in the apartment to hide a gun, and that "anybody can figure that out." Trial counsel explained that because a black cell phone was found on the patio, he was able to present the defense that Appellant was justified in shooting because he had been threatened and because he either saw a firearm that had been hidden after the shooting or he saw an object that it was reasonable for him to think was a firearm. Furthermore, counsel testified that the body-camera recordings were made when the officers had just arrived at the scene and were "kind of spit-balling possibilities" and that he "can't ask somebody, well, did this ever cross your mind," adding that all he could "deal with is what the evidence is." He also explained that the officers' initial speculation that there may have shots fired from inside the apartment would not have been helpful to the defense because there was no forensic evidence that shots were fired from inside the apartment; because, in his statement,

8

Appellant said that Wright and Martin were outside of the apartment on the patio and did not fire shots at him; because the evidence at trial showed, consistent with Evans's statement, that Wright and Martin were on the patio; and because, given the darkness that night and the fact that Appellant was located about 100 feet from the apartment and at a lower elevation than the apartment, someone inside the apartment "would have never known that [Appellant] was even out there." Further, counsel stated that presenting evidence of the body-camera recordings would not "have made a lot of sense given the entirety of the evidence" and did not "really . . . fit in with what our defense had to be." In denying Appellant's motion for new trial, the trial court concluded that trial counsel's decision not to introduce the evidence was a strategic one and did not constitute constitutionally deficient performance.

On appeal, Appellant argues that trial counsel was constitutionally ineffective in failing to present evidence of the officers' observations that shots were possibly fired from inside the apartment toward Appellant's location.

9

(b) To establish that his trial counsel was constitutionally ineffective, Appellant was required to prove both deficient performance by counsel and resulting prejudice. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To show that his lawyer's performance was deficient, Appellant had to demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688. The law recognizes a "strong presumption" that counsel performed reasonably, and the defendant bears the burden of overcoming this presumption. See *Strickland*, 466 U.S. at 689. To carry this burden, Appellant must show that "no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Washington v. State*, 313 Ga. 771, 773 (873 SE2d 132) (2022) (cleaned up). Even when a defendant has proved that his counsel's performance was deficient, he also must prove resulting prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694. Moreover, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

(c) Based on this record, Appellant has failed to prove that trial counsel's performance was deficient. To begin, contrary to Appellant's assertion, the body-camera recordings do not indicate that the responding officers thought that shots were fired from inside the apartment toward Appellant's location some 100 feet away. They indicate only that the officers thought that the shots that hit Wright and Martin may have been fired from inside the apartment and that Wright and Martin may have been shooting at each other. Moreover, an attorney's decisions "as to what witnesses and other evidence to present are a matter of trial strategy," see *Horton v. State*, 310 Ga. 310, 328 (849 SE2d 382) (2020) (cleaned up), and such decisions will form the basis for an ineffectiveness claim "only if they were so patently unreasonable that no competent attorney would have followed such a course." *Washington*, 313 Ga.

11

at 773 (cleaned up). Here, the record shows that trial counsel made a strategic choice to establish the facts needed to support Appellant's self-defense claim by relying on Appellant's statement that, although the victims did not shoot toward him, Appellant nevertheless acted in self-defense based on the victims' verbal threat to him and Appellant's perception that Wright was pointing a gun at him. Moreover, the defense as presented by counsel was consistent with the forensic evidence that no shots were fired from inside the apartment, with witnesses' testimony that Martin and Wright were unarmed, and with Appellant's own statement that the victims did not fire at him. On the other hand, the strategy that Appellant now contends that counsel should have adopted would have been inconsistent not only with the forensic evidence and witness testimony but also with Appellant's own statement. Under these circumstances, Appellant has failed to overcome the strong presumption that counsel's performance was objectively reasonable. See *Davis v. State*, ___ Ga. ___ (___ SE2d ___) (2022 WL 17813444, at *8) (Dec. 20, 2022) (holding that the defendant had failed to

overcome the strong presumption that trial counsel performed reasonably where the record showed that counsel made a strategic choice to present the defendant's self-defense claim through cross-examination of a witness and not by calling an expert witness to testify); *Birdow v. State*, 305 Ga. 48, 49, 52-53 (823 SE2d 736) (2019) (holding that trial counsel did not perform deficiently in electing not to call a defense expert to help establish the defendant's claim of self-defense and instead relying on cross-examination of a State's witness to support that claim, particularly because the expert's testimony would have contradicted a part of the defendant's statement to law enforcement officers that formed the basis for his self-defense claim). Accordingly, Appellant's claim of ineffective assistance fails.

*Judgment affirmed. All the Justices concur.*