NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: November 5, 2024

S24A1015.  STARKS v. THE STATE.

MCMILLIAN, Justice.

Joseph Donnell Starks was convicted of felony murder and other crimes in connection with a vehicular collision resulting in the death of Kristin Dyer and the serious injury of Joshua Cash.[1] On

---

[1] The crimes occurred on December 14, 2016. On September 19, 2018, a Franklin County grand jury indicted Starks, charging him with felony murder predicated on fleeing or attempting to elude a police officer (Count 1), two counts of homicide by vehicle in the first degree (Counts 2-3), two counts of serious injury by vehicle (Counts 4-5), fleeing or attempting to elude a police officer (Count 6), three counts of driving under the influence (Counts 7-9), possession of less than an ounce of marijuana (Count 10), speeding (Count 11), reckless driving (Count 12), driving with a suspended license (Count 13), hit and run (Count 14), open container (Count 15), and littering on a highway (Count 16).

At a trial from November 13 through 16, 2018, the trial court entered a directed verdict for Starks on Count 14, and a jury found Starks guilty of the remaining counts. On November 19, 2018, the trial court sentenced Starks to life in prison for Count 1, a concurrent 15-year sentence for Count 4, a concurrent 12-month sentence for Count 10, a concurrent 12-month sentence for Count 11, a concurrent 12-month sentence for Count 12, a concurrent 12-month sentence for Count 13, and a concurrent 12-month sentence for Count 16. Starks received a $200 fine for Count 15. The trial court merged Counts 2,

appeal, Starks argues that his trial counsel rendered constitutionally ineffective assistance by failing to investigate and present evidence of Starks's medical records to support the defense theory that Starks was unconscious before the collision due to a medical condition rather than by intoxication. In addition, the State argues that the trial court committed two errors in sentencing. For the following reasons, we affirm.

1. The evidence presented at trial showed the following. On December 14, 2016, a sheriff's deputy stationed on the side of Interstate 85 observed a 2010 Kia Rio traveling southbound at

3, and 5-9 for sentencing purposes.

Starks filed a timely motion for new trial on December 3, 2018, which was twice amended by new counsel. Following a hearing on February 12, 2021, the trial court denied the motion for new trial, as amended, on August 24, 2021. Starks filed a notice of appeal on September 29, 2021, and a motion for out-of-time appeal on November 5, 2021. This Court dismissed Starks's appeal as untimely on January 11, 2022. On February 8, 2022, Starks filed an amended motion for out-of-time appeal, which was dismissed by the trial court on April 28, 2022. Starks filed a pro se notice of appeal on May 8, 2023, which was dismissed by this Court as untimely on June 21, 2023. On November 10, 2022, Starks filed a pro se petition for writ of habeas corpus, and the habeas court granted his petition to pursue a direct appeal of the judgment on October 18, 2023. Starks filed a notice of out-of-time appeal in accordance with the habeas corpus order on November 13, 2023. The case was docketed to the August 2024 term of this Court and submitted for a decision on the briefs.

excessive speed. The deputy activated his radar unit, which indicated a speed of 95 miles per hour in an area with a posted speed limit of 70 miles per hour. The deputy pulled onto the interstate, initiated his blue lights and siren, and attempted to catch up to the vehicle to conduct a traffic stop. The vehicle "slowed down and acted as if it was gonna pull over to the shoulder," but then accelerated again. The officer saw two occupants in the vehicle. He observed a male driver, who "looked as if he was reaching over trying to shake somebody in the passenger side seat." The Kia Rio reached speeds over 100 miles per hour, and two other officers joined in the pursuit. One officer testified that he could see a female in the passenger side of the vehicle. At one point, an officer radioed that items were being thrown from the window "just past the exit,"[2] but he was not close enough to see which of the occupants threw the items. The vehicle exited the interstate through the grassy shoulder at Exit 164, still

---

[2] One of the officers later "returned up the roadway" in search of the items thrown from the vehicle. He found a clear plastic bag containing a "green leafy material," determined to be marijuana. An open liquor bottle was also found in the vehicle, along with two cigar packs that contained marijuana.

traveling at a high rate of speed. As the vehicle made it to the top of the ramp, it "blew straight through the stop sign." It attempted to take a right-hand turn onto Highway 320 but entered into the opposite lane of travel and made impact with a Department of Transportation ("DOT") truck. The passenger side of the Rio suffered the primary impact. The pursuit lasted a total of seven to eight miles. At no point did the officers observe the vehicle's brake lights come on.

After the collision, the officers approached the Rio and found a male, later identified as Starks in the driver's seat,[3] and a female passenger, Dyer. Neither occupant was wearing a seatbelt. Initially, Starks was "slumped over . . . in the driver's seat[] and appeared to be unconscious." A few seconds later, two of the officers made contact with Starks, and "he was alert." He was "mak[ing] movements with his hands between the driver's seat," "reaching back occasionally," "rocking back and forth," and "acting very confused." The officers pulled Starks from the smoking vehicle. Dyer was found "severely

_____

[3] Starks had a suspended license at the time of the incident.

injured," "slumped over," and "trapped" in the vehicle. Her right leg was "up in the [passenger] seat," and her left leg was down; neither was in the driver compartment of the vehicle. Though her "head was right behind [Starks's] back," she was sitting in the passenger seat. She was pronounced dead at the scene.

One officer in contact with Starks testified that he could only smell airbag powder and smoke after the crash. But a responding state trooper testified that, upon his arrival, the deputies on the scene advised him that "when they were getting [Starks] out of the vehicle, they could smell a strong odor of alcohol" and that Starks was "very talkative, [with] bloodshot eyes." The trooper confirmed this with a paramedic on the scene, who reported that "once they got [Starks] in the ambulance, they could smell a strong odor of alcohol." The paramedic reported no visible injuries to Starks and noted that he was alert, though somewhat confused and reluctant to answer questions. Starks later admitted to the paramedic that he had been drinking.

The trooper followed Starks to the hospital where Starks

appeared "kind of out of it, under the influence," smelled strongly of alcohol, and had bloodshot eyes and slurred speech. The trooper "could tell that he had been under the influence of alcohol and possibly something else." Two separate blood draws were performed on Starks, each pursuant to a search warrant – one at the scene of the collision and one at the hospital. Starks's blood alcohol report "was positive for ethyl alcohol in the amount of .057 +/- .003 grams per 100 ml."[4] And his toxicology report was positive for marijuana and cocaine, which, along with alcohol, would have combined stimulant and depressant effects. A CT scan impression of Starks's neck was performed after the collision. The scan indicated "very few abnormalities" but stated that Starks had a "possible intimal injury"[5] and recommended a follow-up.

The driver of the DOT truck was identified as Cash. Cash

---

[4] The forensic toxicologist from the Georgia Bureau of Investigation testified that, at such a concentration, one might "begin to see signs of some motor incoordination . . . maybe some issues moving," and an "increase in reaction timing."

[5] At the motion for new trial hearing, Starks's appellate counsel defined the "intima" as "the innermost layer of the wall of the artery or the vein."

suffered a fractured sternum, a knot on his knee, and burns to his left forearm from the airbag deployment; he was unable to return to work for six weeks.

At the motion for new trial hearing, trial counsel testified that the defense theory was that Dyer was actually driving the vehicle at the time of the crash because Starks was so intoxicated that, at some point after the police car's lights came on, he lost consciousness. Counsel argued that Dyer then leaned herself across into the driver seat far enough to reach the gas pedal and steering wheel and was driving the vehicle during the police pursuit. Part of counsel's strategy was to elicit evidence of Starks's intoxication level. Further, trial counsel attempted to show that Dyer was in a position both during the chase and after the collision such that she could have been driving the vehicle.[6]

2. Starks argues that trial counsel was ineffective because he

---

[6] In making this argument, trial counsel highlighted evidence that the pursuing officers never saw the vehicle's brake lights activate (making it less likely that Starks was driving); Dyer did not have a seatbelt on; and she was found with her right leg up in the passenger seat and her head behind Starks's back after the crash.

failed to investigate and present evidence of Starks's medical records to support the defense theory that Starks was unconscious before the collision due to a medical condition rather than by intoxication.

To succeed on his ineffective assistance claim, Starks must show that his trial counsel performed deficiently and that the deficiency prejudiced him. See *Strickland v. Washington,* 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To show deficiency, Starks must establish that counsel "performed his duties in an objectively unreasonable way, considering all the circumstances and in light of prevailing professional norms." *Evans v. State*, 315 Ga. 607, 611 (2) (b) (884 SE2d 334) (2023). And the law "recognizes a 'strong presumption' that counsel performed reasonably, and the defendant bears the burden of overcoming this presumption." Id. An attorney's decisions as to what evidence to present is "a matter of trial strategy," and "such decisions will form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such

a course." Id. at 611 (2) (c) (cleaned up). To show prejudice, Starks "must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different." *Rashad v. State*, 318 Ga. 199, 208 (3) (897 SE2d 760) (2024) (citation and punctuation omitted). If Starks "fails to make a sufficient showing on one part of the *Strickland* test, we need not address the other part." Id. (citation omitted). In reviewing a ruling on a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous. See *Payne v. State*, 314 Ga. 322, 329 (3) (877 SE2d 202) (2022).

Starks has failed to establish that it was objectively unreasonable for his trial counsel to pursue a theory that intoxication (rather than a medical issue) was the cause of Starks's unconsciousness during the police chase.[7] Trial counsel testified at the motion for new trial hearing that, after reviewing Starks's post-collision medical records, the evidence supporting intoxication –

---

[7] It does not appear that trial counsel argued that Starks's voluntary intoxication was a defense; rather, the defense was that Starks was unconscious and was not driving the vehicle at the time of the collision.

including Starks's blood alcohol and toxicology reports, statements from personnel interacting with Starks after the crash, and Starks's own admissions – was stronger than any evidence supporting a theory that Starks lost consciousness due to a medical issue. The evidence about Starks's potential medical issue was from a post-collision CT scan that only indicated a "possible intimal injury." Moreover, it is not clear from the record whether an injury, if any, was pre-existing or a result of the collision. Thus, the record supports that counsel made the tactical decision to elicit evidence of Starks's intoxication to demonstrate to the jury that, because of the drugs and alcohol in Starks's system, he was rendered unconscious and unable to drive the car himself during the police chase, which aligned with the defense strategy. Starks has not presented evidence that overcomes the strong presumption of reasonableness, and we cannot say that counsel chose an objectively unreasonable course of action under the circumstances. See, e.g., *Evans*, 315 Ga. at 612 (2) (c) (appellant failed to overcome the strong presumption that counsel's performance was objectively unreasonable where counsel

10

made a strategic choice to establish facts supporting appellant's self-defense theory rather than presenting a strategy inconsistent with the forensic evidence, witness testimony, and appellant's own statement); *Jackson v. State*, 318 Ga. 393, 398 (1) (a) (897 SE2d 785) (2024) (trial counsel's decision to pursue certain defenses was not objectively unreasonable where the record supported the chosen strategy, even if another unemployed strategy may have been reasonable).

Because Starks has failed to show that his trial counsel's performance was constitutionally deficient, Starks's claim of ineffective assistance of counsel fails.

3. On appeal, the State raises two sentencing issues, which the State claims should have resulted in a longer sentence for Starks.[8]

---

[8] In *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017), we held that "when a merger error benefits a defendant and the State fails to raise it by cross-appeal, we henceforth will exercise our discretion to correct the error upon our own initiative only in exceptional circumstances." One of the primary reasons for this rule is the perceived "unfairness in a practice that effectively penalizes defendants for exercising their right to seek appellate review of their convictions and sentences." Id. Here, the State raised these issues in its responsive appellate brief and did not file a cross-appeal. However, we choose to exercise our discretion to address these sentencing issues because the

11

First, the State argues that the trial court improperly merged the conviction for homicide by vehicle in the first degree into the felony merger conviction. Second, the State asserts that because the fleeing and attempting to elude statute provides that no offense shall be served concurrently to a sentence for fleeing or attempting to elude, the trial court should not have run any sentences for other offenses concurrently with the felony murder sentence. We reject these arguments for the reasons set forth below.

(a) The State asserts that the merger of Count 1 (felony murder) and Counts 2 and 3 (homicide by vehicle in the first degree) was improper under the required evidence test in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006), and that Starks must be resentenced separately for the offense of homicide by vehicle in the first degree. Under that test, "[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime," but the accused may not be

sentencing issues raised here do not result in an increase to Starks's sentence, and we believe it to be beneficial to the bench and bar to provide clarity on these issues.

12

convicted of more than one crime if "one crime is included in the other." Id. at 212-13 (cleaned up). A crime is included in the other when "it is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the other crime." Id. (cleaned up). See *Linson v. State*, 287 Ga. 881, 885 (4) (700 SE2d 394) (2010) ("If the same conduct established the commission of both offenses, it is necessary to take the next step in the analysis by applying the required evidence test for determining when one offense is included in another.") (cleaned up). The State argues that under *Drinkard*'s required evidence test, felony murder and homicide by vehicle in the first degree each requires proof not required by the other crime because while both proscribe causing the death of another during the commission of another offense, each requires proof of the accused committing additional criminal acts not alleged in the other.

Pretermitting whether merger was required under *Drinkard*, we conclude that the trial court properly merged the homicide by vehicle offenses for another reason. In the context of murder and

other crimes involving the killing of a person, "[t]his Court has repeatedly held that only one conviction and sentence may be imposed for the killing of a single victim." *Gomez v. State*, 301 Ga. 445, 455 (4) (a) (801 SE2d 847) (2017) (citing cases). See *Diamond v. State*, 267 Ga. 249, 251 (3) (b) (477 SE2d 562) (1996) (because the defendant was convicted of felony murder, the vehicular homicide count had to be vacated; a defendant "can be convicted only once for the death of each victim"). This is a separate merger rule that this Court has applied when the charges involve the killing of a victim.

Moreover, although Starks correctly points out that under *Diamond,* the homicide by vehicle convictions should have been vacated rather than merged, we have held in other contexts that while "the trial court's nomenclature was incorrect, the error does not affect [a]ppellant's sentence so there is no sentencing error to correct." *Washington v. State*, 313 Ga. 771, 772-73 (2) (873 SE2d 132) (2022) (cleaned up).

(b) The State also argues that, because the felony murder offense in this case is predicated on fleeing and attempting to elude

14

and the fleeing and attempting to elude statute provides that sentences under that statute cannot be served concurrently with any other offense, see OCGA § 40-6-395 (d),[9] the trial court erred in ordering that the sentences for Counts 4, 10-13, and 16 be served concurrently with the felony murder sentence. See *Thompson v. State*, 358 Ga. App. 553 (855 SE2d 756) (2021) (because former OCGA § 40-6-395 (b) (5) (B) (which is now found in OCGA § 40-6-395 (d)) prevents "any portion of a sentence for felony fleeing or eluding from . . . being served concurrently with any other offense," the trial court "was required to sentence [the appellant] to five years to serve on each of the four felony fleeing or eluding convictions, and that these sentences could not run concurrently with each other or the sentences imposed on [the appellant's] other convictions"). Starks counters that this argument has no support because the

---

[9] OCGA § 40-6-395 (d) provides:
Following adjudication of guilt or imposition of sentence for a violation of subparagraph (b)(1)(D) or subsection (c) of this Code section, the sentence shall not be suspended, probated, deferred, or withheld, and the charge shall not be reduced to a lesser offense, merged with any other offense, or served concurrently with any other offense.

discretion whether to impose concurrent or consecutive sentences "reside[s] entirely and solely within the breast of the trial judge[.]" *Keys v. State*, 365 Ga. App. 284, 285 (1) (878 SE2d 133) (2022).

Starks was not sentenced for fleeing or attempting to elude because that conviction was merged into felony murder, so any argument based on that conviction is moot. See *Beamon v. State*, 314 Ga. 798, 800 n.2 (2) (879 SE2d 457) (2022) (noting that appellant's "challenges to the felony murder and aggravated assault counts are moot because those counts were merged or vacated by operation of law, and no sentence was entered on them"); *Stephens v. State*, 303 Ga. 530, 532 (1) (813 SE2d 596) (2018) ("[T]he merger or vacatur of all of [appellant's] convictions except for her felony murder conviction on Count 1 renders moot her arguments as to any counts other than that one."). The State points to no law that precludes sentences from running concurrently to a felony murder conviction and sentence, and to the contrary we have held that "[c]oextensive with their ability to impose a sentence that fits the crime, trial courts have great discretion in determining whether to run

sentences concurrently or consecutively." *State v. Riggs*, 301 Ga. 63, 69 (2) (a) (799 SE2d 770) (2017). Thus, we reject the State's argument that Starks's other sentences could not have been run concurrently to his sentence for felony murder predicated on fleeing and attempting to elude.

*Judgment affirmed. All the Justices concur.*